opinion of the court
Raymond E. Aldrich, Jr., J.
Relator, by writ of habeas corpus, seeks his release from incarceration on the grounds that his continued detention is the result of the illegal acts of respondents in rescinding a grant of parole release previously made.
The facts underlying this proceeding are not the subject of dispute. Relator was convicted and sentenced on September 6, 1975 to a term of 5 to 15 years for the crimes of attempted rape in the first degree, sexual abuse in the first degree and endangering the welfare of a child in the fourth degree. In October, 1980, he was granted parole with the limitation that such parole was to Puerto Rico only which relator accepted although he has resided in New York for 25 years, as such acceptance permitted his release from incarceration. Parole was subsequently rescinded because Puerto Rican authorities reconsidered and declined to accept his parole supervision, further contending that relator would be a danger to the Puerto Rican community in view of his past criminal history. Relator was then given a new parole date in December, 1980 allegedly because he needed further psychiatric counseling. In January, 1981, he was again granted parole on the condition he reside in Puerto Rico, but in April, 1981 Puerto Rico again rejected parole *394 supervision. On April 21, 1981 parole was again rescinded and he was ordered held for one year because of the serious nature of his crime and his prior record. That denial of parole was the subject of an administrative appeal which affirmed the decision of the Parole Board.
Respondents offer no explanation for the foregoing sequence of events other than to argue that the denial of parole in April, 1981 was discretionary within statutory and decisional parameters.
Under the provisions of section 259-i (subd 2, par [c]) of the Executive Law an inmate incarcerated in a State institution may be granted parole after serving at least the minimum term of his sentence if (1) the Parole Board finds that he will remain at liberty without violating the law, (2) his release will not pose a danger to the community, and (3) his release would not deprecate the seriousness of his crime so as to undermine respect for law.
Given the grant to relator of parole twice, it necessarily follows that a determination was twice made by respondent Parole Board that relator could be released within the statutory guidelines of the Executive Law. The subsequent response of the Puerto Rican authorities cannot be cited as a basis to invalidate that determination as it is the one to be made by the Parole Board and not to be delegated to others. Under the provisions of section 259-m of the Executive Law it was incumbent upon respondent Parole Board to first permit Puerto Rican authorities to undertake an investigation before designating that Commonwealth as the place for relator’s release, a procedure apparently overlooked on both occasions.
Respondent Parole Board in twice rescinding the grant of parole made by it applied a double standard rule by finding that relator could be released to Puerto Rico within the standards of section 259-i of the Executive Law but could not be safely released to New York or a sister State. The statute does provide for parole release upon different standards depending on the community to which the inmate is to be released. If the board thought relator could be safely released to the Puerto Rican community, surely he can be released to the New York community, or is the *395 latter community so festered with crime that relator could be tempted to stray from the path of lawfulness into the mire of iniquity and sin? Having made a determination that relator would be released within the statutory guidelines, it was impermissible for respondents to revoke that determination because Puerto Rican authorities declined to accept his probation supervision. Such may afford a valid basis for not permitting parole release to Puerto Rico but it does not deprive relator of the right to parole in New York once (or twice as in this circumstance), a decision was made that relator was eligible for parole.
Respondents by their answer, while denying that petitioner was granted parole in December, 1980, do not deny the granting of parole in January, 1981. Having granted parole but failed to release relator, no explanation is offered how the granting of parole may be unilaterally withdrawn notwithstanding the provisions of subdivision 3 of section 2590-i of the Executive Law which prescribes procedures to be observed on revocation of parole. Further, no explanation is offered as to how relator was determined to be fit for release to Puerto Rico but not fit to be released to New York. Having been granted parole, relator had a legitimate expectation of liberty (Drayton v McCall, 584 F2d 1208). The acts of respondent Parole Board in rescinding that grant fail to satisfy even the most rudimentary level of due process aside from being contradictory to its past actions, and is arbitrary, unreasonable and capricious aside from being illegal.
Having found relator fit for parole, no valid basis has been demonstrated for a subsequent rescission of the parole. Respondent Parole Board cannot, under any known authority, find relator fit to be paroled to one community and not to another.
The petiton is granted and relator shall be released forthwith subject to parole supervision.