675 A.2d 1068

**Eric ALEXANDER**

v.

**Thomas P. CORCORAN, et al.**

**No. 1446, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 8, 1996.

Joseph B. Tetrault, Baltimore, for Appellant.

Richard B. Rosenblatt, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and George A. Eichhorn, III, Assistant Attorney General, on the brief), Baltimore, for Appellees.

Argued before MOYLAN, BISHOP and HARRELL, JJ.

HARRELL, Judge.

This case consists of two consolidated appeals by appellant, Eric Alexander, stemming from the rescission of his grant of parole by the Maryland Parole Commission. Appellant appeals from a decision of the Circuit Court for Baltimore County, that, although denying his request for an immediate release from custody, held that the dictates of due process required a hearing to be held before appellant's grant of parole could be rescinded and a decision of the Circuit Court

for Anne Arundel County affirming the subsequent rescission after the "due process" hearing took place.[1]

## QUESTIONS PRESENTED

Appellant presents two questions for our resolution, which we have slightly rephrased for analysis as follows:

I.  Did the Circuit Court for Anne Arundel County err by affirming the decision of the Parole Commission to rescind appellant's parole?

II. Did the Circuit Court for Baltimore County err by not ordering the immediate release of appellant from incarceration to parole supervision?

Answering both questions in the negative, we shall affirm the judgments.

## FACTS AND PROCEEDINGS BELOW

The underlying facts of this case were the subject of extensive stipulations below, and continue to be essentially undisputed. On 18 June 1982, appellant began serving Maryland sentences, totalling thirty years, resulting from convictions entered by the Circuit Court for Baltimore County on charges of robbery with a deadly weapon and use of a handgun. These offenses occurred, and the Maryland sentences were imposed, while appellant was on parole from a federal bank robbery sentence. The United States Parole Commission issued a parole violation warrant and lodged it as a detainer against appellant's Maryland custody.[2] It is this detainer that

---

1.  Appellees in the appeal from the Circuit Court for Baltimore County are Thomas P. Corcoran, Warden of the Maryland Correctional Pre-Release System, Paul J. Davis, Chairperson of the Maryland Parole Commission, and the Maryland Parole Commission itself. The only named appellee in the appeal from the Circuit Court for Anne Arundel County is the Maryland Parole Commission.

2.  While appellant was awaiting trial on the Maryland charges, the detainer was originally lodged against appellant with the Warden of the Baltimore County Jail. After the term of incarceration was imposed, appellant was transferred to the Maryland Division of Correction and incarcerated at the Maryland Penitentiary. The federal parole violation

eventually gave rise to the unfortunate and somewhat unusual circumstances of this case.

In November of 1983, while incarcerated at the Maryland Penitentiary, appellant appeared for a parole revocation hearing before a representative of the United States Parole Commission. The decision of the United States Parole Commission was to revoke appellant's federal parole, and set an eight year presumptive re-parole date, which effectively meant that the balance of appellant's federal sentence would run concurrently with his incarceration on the Maryland convictions. It is worthy of mention that, at the time of the events giving rise to this action, an outstanding detainer was treated by the Maryland Division of Correction as additional "points" to a prisoner's objective classification scoring under a former Division of Correction Directive. In appellant's case, these additional points prevented him from being transferred to a lower-security institution.

On 26 July 1991, the United States Parole Commission issued a "Certificate of Parole *Nunc Pro Tunc*," ordering the re-parole of appellant from the balance of his federal sentence, effective 18 June 1990. Shortly after this federal order was issued, the Division of Correction received a copy of it. For reasons most likely attributable to neglect, despite having notification of appellant's federal re-parole, the Division of Correction treated the federal detainer as still in effect. Appellant was also unaware that the federal detainer was no longer viable.

At a 1 June 1993 hearing, the Maryland Parole Commission considered appellant for parole. The Parole Commission's hearing officer made his recommendation that same day, and completed a "Parole Recommendation/Decision" form. The decision of the hearing officer was to "Approve [the parole] to detainer only (Federal Parole violation)." On the section of the form describing the "Contingencies of Approval Prior to

---

warrant followed appellant and was lodged as a detainer against him with the Warden of the Penitentiary.

Release," which is apparently a checklist of items such as substance abuse therapy, education, work release/home detention, psychotherapy, etc., the hearing officer wrote: "No Home verification required before release." Similarly, in the "Special Conditions After Release" portion of the form, in the space captioned, "Other," the officer wrote: "supervise on parole after release from Federal Authorities." Finally, in the area provided for the hearing officer's remarks, the following was penned: "3RD hearing, satisf[actory] [institutional] adjustment since last hearing. [Appellant] has served 11 yrs., and has Federal detainer which limits lesser security progress." The hearing officer's recommendation was adopted by the parole commissioner on 2 June 1993, and an "Order for Release on Parole" was executed by the chairperson of the Parole Commission on 3 June 1993, with the notation, "Approve to Detainer Only (Federal Parole Violation) Supervise on Parole After Release From Federal Authorities."

Before appellant was ever released from Maryland custody, on 4 June 1993, the Division of Correction, apparently having discovered or rediscovered its advisement of the 1991 federal action, gave notice to the Parole Commission and to appellant that, as of 18 June 1990, the detainer lodged against appellant by the United States Parole Commission was no longer in effect. With this information, on 9 June 1993, the Parole Commission rescinded appellant's parole, explicitly indicating that "additional information received" was the reason for the rescission. In addition, the Parole Commission notified appellant that a rehearing would be scheduled sometime in September of 1993. In actuality, appellant did not have another parole hearing until 2 December 1993. The December hearing resulted in recommendations for work release and appellant's progress to lesser security,[3] as well as the scheduling of another hearing for June of 1995. These recommendations were adopted by the parole commissioner.

---

3. As discussed above, the progress to lesser security was made available at this time because of the recognition that the federal detainer was no longer in effect.

The proceedings that led to the first appeal in the instant case were commenced by appellant's filing of a petition for writ of habeas corpus in the Circuit Court for Baltimore County on 22 December 1994. Appellant alleged in the petition that his due process rights under the United States and Maryland Constitutions were violated by the "arbitrary" rescission, without adequate notice and hearing, of the parole granted to him on 3 June 1993. A hearing was held on the matter before Chief Judge Edward A. DeWaters on 29 March 1995, during which testimony of both appellant and the hearing officer was taken. The matter was held *sub curia,* and an opinion was issued on 5 May 1995.[4] The pertinent portion of Judge DeWaters's opinion is transcribed below:

It seems apparent, and the Court so finds, that at the point when the commissioner signed [the 3 June 1993] order, [appellant] was on parole and was afforded a constitutionally protected liberty interest. No longer could the [Parole] Commission act without extending due process to [appellant]. This would require the Commission to conduct an appropriate hearing with notice to appellant before any action could be taken regarding the order of June 3, 1993.

This hearing is to be conducted as soon as possible. In the meantime, the June 3, 1993 order of parole is still in effect. Therefore, the process for the parole of [appellant] must begin under the order. The result of the hearing may or may not [a]ffect this process.

Following the decision of the Circuit Court for Baltimore County, the Parole Commission issued a warrant for the arrest and detention of appellant (a "retake warrant") on 9 May 1995, alleging that there was reasonable cause to believe appellant had violated the terms and conditions of his parole. On 15 May 1995, appellant moved to quash the parole retake warrant or, in the alternative, to reconsider its 5 May 1995 decision. Judge DeWaters denied appellant's motion by marginal notation, dated 19 May 1995, but according to the docket

---

4. The docket entries indicate that the opinion was not filed, however, until 10 May 1995.

entries, the denial was not filed until 25 May 1995. Appellant noted an appeal on 15 June 1995; appellees did not cross-appeal from the court's decision.

Meanwhile, on 19 May 1995, in purported compliance with the decision of the Circuit Court for Baltimore County, a special hearing on appellant's case was convened before Parole Commissioner Maceo Williams at the Jessup Pre–Release Unit. No allegations were made that appellant had committed any new criminal offenses or violated any prison disciplinary rules since the grant of parole on 3 June 1993. The parties also agreed that appellant had not obtained the grant of parole through fraud or lack of candor. Nevertheless, the parole commissioner found that the 3 June 1993 order for parole was not a grant of release into the community, but rather, "the parole was only to change the incarceration from the State of Maryland to the federal authorities." Furthermore, the commissioner found that "continued incarceration was a condition of the Parole Order," and because the condition could not be satisfied due to the absence of a federal detainer, "the parole Order [was] a nullity." Accordingly, the Parole Commission formally rescinded the order of parole it previously issued on 3 June 1993.

Pursuant to Md.Ann.Code (1957, 1993 Repl.Vol., 1995 Cum. Supp.) art. 41, § 4–511(e), appellant appealed the rescission to the Circuit Court for Anne Arundel County on 6 June 1995. The electronic recording of the 19 May 1995 administrative hearing was apparently misplaced, so a transcript was not made part of the record before the circuit court. The parties agreed, however, to supplement the administrative record with stipulations, documents, and memoranda of law. On 30 October 1995, Judge Eugene Lerner held a hearing, after which he affirmed the Parole Commission's decision by a memorandum opinion and order filed 2 November 1995. The portion of Judge Lerner's opinion offering the court's rationale is set forth below:

In this case, the Court must decide if the Maryland Parole Commission can rescind an inmate's parole after it discovers

that it mistakenly believed a detainer existed and paroled an inmate on that basis.

For guidance, the Court looks to the decision of the Court of Appeals in [*Patuxent Inst. Bd. of Review v. Hancock*, 329 Md. 556, 620 A.2d 917 (1993) ]. In that decision the Court stated that "[c]onduct which not only .occurred before the parole or probation decision was made but was [not] known to the granting authority may, but need not, support rescission."

This Court finds that the fact that a federal detainer did not actually exist is new information which, when discovered, would allow the Maryland Parole Commission to rescind [appellant's] parole.

(citations omitted). Appellant filed a timely appeal from that decision on 14 November 1995. This Court granted a joint motion by the parties for consolidation of the two cases on appeal.[5]

---

**5.** Although not part of the record in the cases below, appellant has included in his reply brief, filed 1 April 1996, some information of "events subsequent to the filing of the appeals in these consolidated cases" that we find noteworthy:

> [Appellant] has been transferred from the Jessup Pre–Release Center to the Baltimore Pre–Release Center, and from the Baltimore Pre–Release Center to the Maryland Division of Correction's Home Detention Unit ("HDU"). It is counsel for [appellant's] understanding that the transfer to HDU was undertaken as part of the Parole Commission's instructions for [appellant]. Although still not yet on parole, [appellant] resides with his grandmother in Baltimore and enjoys a great deal more liberty under HDU supervision than he would in the physical custody of the Division of Correction.

It becomes apparent to us that the recent information supplied to us by appellant raises the specter that the instant appeal may become moot before we render our decision. Appellant contends that even if he is released before our decision is filed, his appeal "is not necessarily moot" because courts in other jurisdictions have ordered the release from the remainder of the parole term and/or the expunction of portions of the parolee's record in certain parole cases. As discussed, *infra*, based on the specific facts of this case, on the assumption that appellant is actually on parole, we would not be inclined to grant any such "special" relief, and would not hesitate to exercise our power under Maryland Rule 8–602(a)(10) to dismiss the appeal as moot. Nonetheless, until we receive notice that appellant is literally on parole, we do not believe the instant case to be moot under the familiar

## DISCUSSION

### I.

We are called upon to determine whether the Circuit Court for Anne Arundel County properly affirmed the Parole Commission's 19 May 1995 decision to rescind appellant's 3 June 1993 grant of parole. Although appellant's contentions of error will be reviewed in greater depth, *infra*, for the sake of clarity and simplicity, we set forth our basic view of this case in summary fashion at the outset. The 3 June 1993 order of parole was clearly "approve[d] to detainer only." In spite of appellant's reliance on certain regulations that require the Parole Commission to consider various criteria before ordering parole, we do not find implicit in the 3 June 1993 order a finding by the Parole Commission that appellant was ready to be assimilated back into society. Because the Parole Commission believed appellant was merely being "released" into the custody of federal authorities, such regulatory requirements were not fulfilled. Shortly thereafter, all parties to the parole proceeding became aware that they were mistaken in their belief that the federal detainer existed. We have little doubt that appellant was unaware of the mistake. The Parole Commission, on the other hand, is instructed by its own regulations to investigate the status of detainers. In this case, the Parole Commission evidently failed to fulfill its responsibility in this regard. Nevertheless, the remedy for this oversight is not an immediate release of appellant to the nonexistent detainer, effectively putting him back on the streets. Without the Parole Commission performing a proper home and job verification, a timetable for readjustment to society, as well as related inquiries, the substantial interest in public safety precludes such an option. The more appropriate course is basically what the Parole Commission did, i.e., rescind the grant of parole to detainer because there was no detainer, perform a reevaluation of the possibility of appellant's release into the community, and, upon finding that such action was not

---

formulation of the concept. *E.g., Attorney General v. Anne Arundel Cty. Sch. Bus,* 286 Md. 324, 327, 407 A.2d 749 (1979).

yet propitious, begin appellant's gradual progression towards release. Accordingly, we see no error by the Circuit Court for Anne Arundel County in affirming the rescission of the parole order. We turn now to examine the details of appellant's assertions of error.

Appellant first advances the argument that the 3 June 1993 parole to the federal detainer was a concession, implicit in the grant of parole, that he is a suitable candidate for parole. In support of this contention, appellant cites COMAR 12.08.01.21B(5)(b), which provides: "The [Parole] Commission may parole an inmate to meet detainers if the inmate is considered in other respects to meet the parole criteria set forth in Regulation .18." Regulation .18 provides, in relevant part:

(1) The Commission shall have the exclusive power of parole release. In determining whether a prisoner is suitable for release on parole the Commission considers:

   (a) The circumstances surrounding the crime;

   (b) The physical, mental, and moral qualifications of persons who become eligible for parole;

   (c) Whether there is reasonable probability that the prisoner, if released on parole, will remain at liberty without violating the laws; and

   (d) Whether the release of the prisoner on parole is compatible with the welfare of society.

(2) The Commission also considers the following criteria:

   (a) Whether there is substantial risk the individual will not conform to the conditions of parole;

   (b) Whether release at the time would depreciate the seriousness of the individual's crime or promote disrespect for the law;

   (c) Whether the individual's release would have an adverse affect on institutional discipline;

   (d) Whether the individual's continued incarceration will substantially enhance his ability to lead a law abiding life when released at a later date.

(3) To make these determinations the Commission examines:

(a) The offender's prior criminal and juvenile record and his response to prior incarceration, parole or probation, or both;

(b) The offender's behavior and adjustment and his participation in institutional and self-help programs;

(c) The offender's vocational, educational, and other training;

(d) The offender's current attitude toward society, discipline, and other authority, etc.;

(e) The offender's past use of narcotics, alcohol, or dangerous controlled substances;

(f) Whether the offender has demonstrated emotional maturity and insight into his problems;

(g) Any reports or recommendations by the sentencing judge, the institutional staff, or by a professional consultant such as a physician, psychologist, or psychiatrist;

(h) The offender's employment plans, his occupational skills, and his job potential;

(i) The offender's family status and stability;

(j) The offender's ability and readiness to assume obligations and undertake responsibilities;

(k) The adequacy of the offender's parole plan and the availability of resources to assist him;

(l) Any other factors or information which the Commission may find relevant to the individual's consideration for parole.

COMAR 12.08.01.18A. *See also* Md.Ann.Code art. 41. § 4–506 (Repl.Vol.1993) (setting forth mandatory statutory criteria to be considered at parole suitability hearings).

The administrative documentation relative to the 3 June 1993 order of parole clearly indicates that the above-listed criteria were not followed in their entirety by the Parole Commission because of the detainer, or, alternatively, they

were followed in their entirety if interpreted in light of the presence of the detainer. For example, as to COMAR 12.08.01.18A(1)(c) & (d), it is far more unlikely that appellant would commit another crime against society if he is confined to a federal prison. Under either theory, once provided with the information that the detainer was no longer in existence, the Parole Commission either had to undertake further investigation, or reevaluate the factors already investigated under the assumption of a release into the community at large to comport with the statutory and regulatory criteria for parole. It could not proceed with the original grant of parole, and rescission was appropriate.

Appellant next relies on the case of *Patuxent Inst. Bd. of Review v. Hancock,* 329 Md. 556, 620 A.2d 917, *cert. denied,* 510 U.S. 905, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993), as limiting the circumstances that permit a parole to be rescinded. "[M]isconduct occurring after parole or probation has been granted, but before it becomes effective" has been held in Maryland to permit rescission. *Id.* at 577–78, 620 A.2d 917 (citing *Matthews v. State,* 304 Md. 281, 498 A.2d 655 (1985)). "Parole also may be rescinded when it has been obtained by means of fraud or lack of candor." *Patuxent Inst., supra,* 329 Md. at 579, 620 A.2d 917 (citation omitted). Furthermore, "[c]onduct which not only occurred before the parole or probation decision was made but was [not] known to the granting authority may, but need not, support rescission." *Id.* (citations omitted). Appellant alleges that because: (1) the record is devoid of any misconduct on his part; (2) there is no evidence of fraud or lack of candor on his part; and (3) there was no "conduct" on his part that led to the rescission of the parole—the lifting of the federal detainer was an event over which he had no control, and is information that has no bearing on parole—his parole cannot be rescinded. As discussed above, the information regarding the status of the federal detainer did, in a practical sense, have bearing on the criteria used by the Parole Commission in deciding appellant's case. In addition, although the absence of the detainer was not "misconduct," "fraud," or "conduct," when the Parole Board considered the effect on the likelihood of recidivism and

society's welfare as a whole if the parole, as originally ordered, was effectuated, the information that there was no federal detainer was at least the equivalent in weight of certain conduct violating parole conditions that could lawfully lead to rescission. That this unusual situation was not explicitly discussed in *Patuxent Inst., supra,* does not lead us to conclude that the Parole Commission's rescission is inconsistent with the general principles articulated therein.

■ Appellant argues further that the Maryland Parole Commission had an obligation, pursuant to COMAR 12.08.01.17B(1)(c) [6] and COMAR 12.08.01.21B(5)(a) [7] to investigate the status of the detainer. Because there was testimony in the Baltimore County case that the Parole Commission was derelict in this responsibility, appellant claims that its action should be struck down inasmuch as it failed to follow its own regulations. *See Hopkins v. Inmate Grievance Comm'n,* 40 Md.App. 329, 335–36, 391 A.2d 1213 (1978), *cert. dismissed,* 285 Md. 120 (1979). With this, we cannot agree. In the first place, the appeal of the formal rescission on 19 May 1995 is from the Circuit Court for Anne Arundel County. At the time of the rescission hearing, the Parole Commission knew the status of the detainer. Appellant is correct, however, in asserting that the Parole Commission should have followed its regulations and investigated the status of the detainer. Nevertheless, assuming it had, it would have discovered that the detainer had been removed. Undoubtedly this discovery would have precluded an absolute parole for appellant on 3 June 1993. It is far more likely that the plan for appellant's parole would have been gradual, in accordance with what has actually been done since the information was received. In short, this case does not present the kind of situation in which

------

6. That section provides that "[i]n cases where a detainer is on file or a pending charge is indicated, its status will be investigated and reported, so far as reasonably possible, before that hearing."

7. That provision states that "[t]he status of any detainers lodged against an inmate will be investigated so far as reasonably possible, before the parole hearing and the Public Defender shall be notified and encouraged to assist the inmate in the disposition of the detainer."

the remedy for a clerical error by the agency should be fashioned at the expense of public safety.

Appellant maintains additionally that the Maryland Parole Commission knew that, following the intended transfer of appellant to federal custody, the United States Parole Commission could have released him in a very short period of time. Therefore, appellant posits that the Maryland Parole Commission had no right to rescind its grant of parole simply because the United States Parole Commission had made such a decision several years hence. Appellant is accurate in his contention that, had the detainer been in effect, the federal authorities could have released him as soon as they satisfied their own parole requirements, without the advice and consent of Maryland. Regardless of that possibility, as discussed above, because it is unlikely that the Parole Commission would have paroled appellant on 3 June 1993 if they did not believe the detainer was still valid, what might have been the case if the detainer was valid is irrelevant.

Similarly, appellant places reliance on the language used in the parole order, "Supervise on Parole after release from Federal authorities," as implying that the Parole Commission knew he was going to be released from federal custody. As the Maryland Parole Commission would have had no authority to revoke his Maryland parole if they disagreed with the United States Parole Commission's decision regarding his release, appellant argues that it should not be allowed to do so under the facts of the present case either. It must be remembered that, when the United States Parole Commission granted appellant parole, he was still incarcerated and in the custody of the Division of Correction for an indefinite period of time. Just as the Maryland Parole Commission failed to perform standard checks, such as a home verification, because it assumed appellant would be remanded to the custody of federal authorities, the United States Parole Commission similarly would not need to perform such verifications when it paroled appellant. Thus, under appellant's view, his immediate release should be granted even though both sovereigns believed that when they paroled him, he would be released

only to the other sovereign's custody. While we agree that this is an unusual case that worked a hardship upon appellant (especially because the mistaken belief that a detainer still existed slowed his progress to minimum security and erroneously led him to believe that he would be paroled from Maryland custody), we are unable to conclude that the rescission should be overturned and appellant's immediate release ordered.

In addition, appellant attempts to distinguish certain cases cited by the Circuit Court for Anne Arundel County in its written opinion, i.e., *Fardella v. Garrison*, 698 F.2d 208 (4th Cir.1982), and *Fox v. United States Parole Comm'n*, 517 F.Supp. 855 (D.Kan.1981). After reviewing those cases, we agree with appellant that the cases are factually distinguishable from the case at bar; nevertheless, they do provide some support for the idea of rescinding a parole based upon "new information." [8] It appears to us that the circuit court properly valued the persuasiveness of both cases in its opinion.[9]

Furthermore, appellant asserts that the New York Supreme Court case of *People ex rel. Alamo v. Reid*, 111 Misc.2d 393, 444 N.Y.S.2d 350 (Sup.Ct.1981), is instructive. The pivotal difference between the New York case and the instant case is

---

8. We note that appellant disputes that the information regarding the detainer was, in fact, "new," as it was provided to the Department of Correction several years before the parole hearing. All parties agree, however, that the information was unknown to the Parole Commission at the time of the 3 June 1993 parole, and its subsequent discovery is at least "new" to the Parole Commission.

9. The circuit court's realization of the value of these cases from foreign jurisdictions is evidenced by the introductory signals used in its opinion. The court cited the two cases in addition to *Patuxent Inst., supra*, which case it cited without an introductory signal. The court used the *"Cf."* introductory signal to introduce *Fardella* and the *"Compare"* signal to precede *Fox*. According to *The Bluebook A Uniform System of Citation* (15th ed. 1991), *"Cf."* is an signal in which the "[c]ited authority *supports a proposition different from the main proposition but sufficiently analogous to lend support." Id.* at 23 (emphasis in original). Similarly, the *"Compare"* signal is classified as a "[s]ignal that suggests a profitable comparison," and *"[c]omparison of the authorities cited will offer support for or illustrate* the proposition." *Id.* (emphasis in original).

that, in *Reid*, the court found that "[g]iven the grant to relator of parole twice, *it necessarily follows that a determination was twice made by Respondent Parole Board that relator could be released within the statutory guidelines of the executive law.*" *Id.* at 352 (emphasis supplied). As discussed above, such a finding does not necessarily follow in the instant case. In fact, it was clear from the parole review documents that many of the statutory and regulatory guidelines either were not adhered to, or were skirted, because of the perceived existence of the federal detainer. Without that crucial similarity, as well as the fact that the New York Parole Board's conditional release of the inmate was highly unorthodox,[10] we do not view the case to be as "instructive" in the case at bar as appellant does.

Finally, appellant apparently seizes upon the literal language used by Parole Commissioner Williams that "continued federal incarceration was a condition of the Parole Order" to launch the argument that "incarceration is not a lawful condition of parole." We agree with the basic thrust of appellant's argument, but find that it has no application to the instant case. Continued incarceration in a Maryland prison was not a term of appellant's parole. The only "condition" of this parole was that the federal authorities accept their responsibility under the detainer that the Maryland Parole Commission thought was still lodged against appellant's Maryland custody. Such a "parole to detainer" is not inconsistent with the statutory definition of parole found in Md.Ann.Code art. 41, § 4–501 (Repl.Vol.1993).

## II.

Appellant also appeals from the earlier judgment by the Circuit Court for Baltimore County, which held that he had a

---

10. The New York Parole Board conditioned the inmate's release on his *de facto* deportment to Puerto Rico and later rescinded the parole after Puerto Rican authorities refused to accept the inmate on two separate occasions. The Parole Board purportedly based its rescission decision on the nature of the inmate's crime and his prior record. *Reid, supra,* 444 N.Y.S.2d at 351.

78

liberty interest in upholding the 3 June 1993 grant of parole. Pursuant to that holding, the circuit court ordered that a hearing, consistent with due process, was required before the parole could be rescinded. Such a hearing was held by the Parole Commission approximately two weeks after the decision was rendered by the circuit court. Nevertheless, appellant argues that "[t]he court should have ordered [his] release from incarceration to parole supervision. Under the circumstances of this case, any other relief is inconsistent with the court's habeas corpus function." We disagree.

The procedural mechanism by which the case reached the circuit court, i.e, a writ of habeas corpus, did not necessitate the relief of an absolute release on parole, even though the court found that insufficient due process was provided to appellant. As the Court of Appeals has recognized, "Maryland cases clearly hold that it is not inappropriate in a habeas corpus case to grant relief other than the release of the prisoner," and that "the ordering of a new parole hearing [is] an available type of relief in a habeas corpus case." *Gluckstern v. Sutton,* 319 Md. 634, 663–64, 574 A.2d 898, *cert. denied sub nom. Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). Moreover, as discussed in part I. of this opinion, given these circumstances, allowing for the rescission of appellant's order for parole was appropriate; therefore, especially considering the public safety concerns, the immediate release of appellant was not required.[11]

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**

---

11. We note that there may be some question as to whether, or to what extent, a "parole to detainer" creates a liberty interest. However, the circuit court found that a liberty interest was created by the parole order, and the Parole Commission did not cross-appeal from this decision. Accordingly, we need not decide this question.